UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

FRANCISCO SANTOS,

                         Plaintiff,

          -against-                                    9:20-CV-0421 (LEK/DJS)

JEFFREY P. WOOD, Correction Officer
Elmira Correctional Facility, *et al.*,

                         Defendants.

_____

## DECISION AND ORDER

## I.    INTRODUCTION

The Clerk has sent to the Court for review a pro se civil rights complaint filed by plaintiff
Francisco Santos pursuant to 42 U.S.C. § 1983 asserting claims arising out of his confinement in
the custody of the New York State Department of Corrections and Community Supervision
("DOCCS"). Dkt. No. 1 ("Complaint"). Plaintiff, who is currently confined at Auburn
Correctional Facility ("Auburn C.F."), has not paid the statutory filing fee and seeks leave to
proceed in forma pauperis ("IFP"). Dkt. Nos. 2 ("IFP Application"); 3 ("Inmate Authorization
Form"). Plaintiff has also filed a motion for a preliminary injunction seeking certain medical
care. Dkt. No. 4 ("Motion for Preliminary Injunction").

## II.   IFP APPLICATION

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court
without prepayment of the filing fee that would ordinarily be charged." Cash v. Bernstein, No.
09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010). "Although an indigent,
incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently
pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate

accounts." Id. (citing 28 U.S.C. § 1915(b); Harris v. City of New York, 607 F.3d 18, 21 (2d Cir. 2010)).

Having reviewed Plaintiff's IFP Application and Inmate Authorization Form, the Court finds that Plaintiff has demonstrated sufficient economic need to commence this action without prepayment of the filing fee. Accordingly, Plaintiff's Second IFP Application is granted.

## III.   SUFFICIENCY OF THE COMPLAINT

### A.  Standard of Review

Because Plaintiff meets the financial criteria for commencing this action IFP, and because Plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the Complaint under 28 U.S.C. §§ 1915(e) and 1915A. Section 1915(e) directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).[1]

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; see also Carr v. Dvorin, 171 F.3d 115, 116 (2d Cir. 1999) (explaining that § 1915A applies to all actions brought by prisoners against government officials even when plaintiff has paid the filing fee).

---

[1]  To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989).

A court may not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Federal Rule of Civil Procedure 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. Sheehy v. Brown, 335 F. App'x 102, 104 (2d Cir. 2009).

### B.  Summary of the Complaint[2]

The incidents that form the basis for the Complaint allegedly occurred while Plaintiff was confined at Clinton Correctional Facility ("Clinton C.F."), Attica Correctional Facility ("Attica C.F."), Southport Correctional Facility ("Southport C.F."), Elmira Correctional Facility ("Elmira C.F."), and Auburn C.F. See Compl. Plaintiff alleges the following facts in his Complaint.

As background, Plaintiff underwent surgery in 2009 for a broken right leg and had a metal rod and screws inserted into his femur. Compl. at 7–8.[3]

---

[2]  The Complaint includes exhibits. See Dkt. No. 1-1 ("Exhibits"). The Court can consider these Exhibits, in addition to the Complaint, at this stage. See Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991) (stating that a complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference).

### 1.   Clinton C.F.

From March 2013 until March 2016, Plaintiff was incarcerated at Clinton C.F. Compl. at 9. In December 2015, Plaintiff underwent surgery to remove and replace hardware in his right leg. Id. at 11. After surgery, the medical providers refused to provide Plaintiff with pain medication due to an "unwritten policy" authorized by defendant DOCCS Commissioner Anthony J. Annucci. Id. at 11–12. The policy held that "[i]nmates . . . held under the Custody of DOCCS and in General Population shall not be provided with opioid, narcotic, and/or abusive potential medications." Id. at 11. Additionally, Plaintiff was not permitted to attend appointments for radiological studies or neurological and pain clinic consultations. Id. at 12.

### 2.   Attica C.F. and Southport C.F.

From March 2016 until October 2018, Plaintiff was incarcerated at Attica C.F. Compl. at 9. In October 2018 and November 2018, Plaintiff was incarcerated at Southport C.F. Id. While confined at Attica C.F. and Southport C.F., the medical staff refused to provide Plaintiff with pain medication due to Annucci's "unwritten policy." Id. at 13–14. Additionally, Plaintiff was not permitted to attend appointments for radiological films or neurological and pain clinic consultations. Id.

### 3.   Elmira C.F.

From November 2018 until April 2019, Plaintiff was incarcerated at Elmira C.F. Compl. at 10. The medical staff refused to provide Plaintiff with pain medication due to Annucci's "unwritten policy." Id. at 14–15. Furthermore, Plaintiff was not permitted to attend appointments for radiological films or neurological and pain clinic consultations. Id.

---

[3] Citations refer to the pagination generated by CM/ECF, the Court's electronic filing system.

On November 20, 2018 and November 21, 2018, Plaintiff submitted two grievances claiming that Elmira C.F. staff members were deliberately indifferent to his serious medical needs. Id. at 15; Exs. at 53. In late December 2018, defendants Sergeant John Doe, Correction Officer Jeffrey P. Wood, and Correction Officer Christopher M. Learn approached Plaintiff's cell, with copies of his grievances and told Plaintiff that he would "not have a good stay at Elmira C.F." if he continued to use the grievance program. Compl. at 17–18.

In January 2019, Plaintiff submitted a complaint to the Elmira C.F. Superintendent accusing John Doe of harassment and threatening behavior. Id. at 18–19. From January 2019 until March 2019, Wood and Learn verbally harassed and threatened Plaintiff. Id. at 19.

On March 15, 2019, Plaintiff was working as a porter on G-Block when he saw Wood and Learn speaking with defendants Correction Officers Timothy A. Perry and J. Hartman. Id. at 19–20. Wood directed Plaintiff to go to the entrance of the of the cell block, where the defendants were gathered. Id. at 20. Plaintiff complied and Perry conducted a pat frisk. Id. At the conclusion of the search, Hartman told the other defendants that "the cry baby is clean," but stated that "John Doe #1 wants to send him to the box." Id. Perry directed Plaintiff to "lock in" his cell and he complied. Id. at 21. Plaintiff then observed Wood, Perry, Hartman, and Learn gather inside the "First Officer's" office. Id.

Shortly thereafter, Learn returned to Plaintiff's cell and directed him to place his hands around his back. Id. at 21. Learn directed another officer to escort Plaintiff to the Special Housing Unit ("SHU"). Id. When Plaintiff asked why he was going to the SHU, Learn responded, "you should ha[ve] thought of that before complaining to the Superintendent[.]" Id.

On March 17, 2019, Perry and Learn issued a false misbehavior report charging Plaintiff with possessing a weapon and smuggling. Id. at 21, 23, 27. On March 21, 2019, defendant

Robert A. Ruppel presided over a disciplinary hearing related to the misbehavior report. Id. at 24. After several adjournments, Ruppel found Plaintiff guilty and sentenced him to 180 days in the SHU, with a loss of privileges. Id. at 24–26.

During this period, from January 2019 until March 2019, Plaintiff continued to complain of pain and asked the medical staff for pain killers and for information related to his scheduled medical appointments. Id. at 29. When Plaintiff's informal complaints and requests went unanswered, Plaintiff "started submitting letter complaints" to Annucci, defendant DOCCS Deputy Commissioner/Chief Medical Officer John Morley, and defendant Regional Health Services Administrator Danielle Snider. Id.

On March 29, 2019, Plaintiff was seen by defendant Dr. Kevin W. Ott. Id. at 29. Plaintiff complained to Ott of pain in his back and right leg. Id. at 29–30. Ott informed Plaintiff that he was scheduled for radiological studies and for consultations at the neurosurgical and pain clinics. Id. Plaintiff told Ott that he was unable to receive pain medication treatment due to the "unwritten policy." Id. at 30. Immediately upon hearing Plaintiff's complaints, Ott canceled the scheduled appointments. Id. Ott stated, "[s]ince you remind me, I don't even know how you got placed on scheduled appointments for [these] studies, when we are not even allow[ed] to provide you with narcotic medication. Th[e] scheduled appointments will be redundant, [and a] waste of time and money." Id. at 31.

4. *Auburn C.F.*

In June 2019, Plaintiff was transferred to Auburn C.F. Compl. at 10. Upon transfer, Plaintiff "immediately continued to constantly complain" to Auburn C.F. medical staff about pain and muscle stiffness in his back and leg. Id. at 33. On August 8, 2019, Plaintiff was transferred to an outside hospital for a CT scan, which revealed a "[r]ight sided paracentral disc herniation." Id.

On August 9, 2019, Plaintiff was treated at sick call. Exs. at 7. The medical provider noted Plaintiff appeared with complaints of right leg pain which, in Plaintiff's opinion, were unrelated to his back. Id. Plaintiff complained that "physical therapy is for my back" and asked for "real pain meds[.]" Id. The provider noted in Plaintiff's medical records that he may be "drug seeking." Id.

On August 12, 2019, defendant Dr. Deborah Geer reviewed the results of the CT scans and scheduled Plaintiff for a neurosurgical consultation. Id. at 33. Geer prescribed Meloxicam and provided a "flats" permit, but denied Plaintiff 's request for Tylenol with Codeine in accordance with Annucci's policy. Id.; Exs. at 7.

On September 25, 2019, Plaintiff was seen by a neurosurgical specialist. Compl at 34.; Exs. at 23. The specialist noted that Plaintiff was currently prescribed Cymbalta and Mobic. Id. The specialist also recommended MRI studies, an EMG, a consult with a pain specialist, and a neurosurgical follow up appointment. Id.; Compl. at 34. When Plaintiff returned to Auburn C.F., the medical staff scheduled the appointments. Id. However, Snider then canceled the appointment for MRI films and ordered another CT study. Id.

On October 15, 2019, an EMG was performed of Plaintiff's lower extremities. Exs. at 19, 40. Then, on October 17, 2019, Plaintiff was seen at the pain clinic for complaints of pain and stiffness in his back and right leg due to herniated discs. Id. at 35. The specialist suggested a treatment plan consisting of pain medication and muscle relaxers or, alternatively, "injections" every month. Id. After contemplating the side effects of each plan, Plaintiff opted for the medications. Id. On October 22, 2019, defendant Nurse Laura Oskia-Michales submitted a prescription for Topomax and noted that Plaintiff refused injections. Id. at 36. Snider

subsequently denied the prescription in accordance with the "unwritten policy." Id. However, on October 25, 2019, Plaintiff did receive a CT scan of his back. Exs. at 19.

On December 10, 2019, Plaintiff was treated at sick call. Exs. at 27. The provider put Plaintiff on a "call out" for "TENS pads and battery." Id. The provider also noted that Plaintiff was scheduled for a neurosurgical consult and a consult with the pain clinic on December 11, 2019 and December 14, 2019. Id.

On December 11, 2019, Plaintiff was transferred to an outside hospital for a neurosurgical follow-up appointment. Id. at 40. The specialist informed Plaintiff that he could not provide a course of treatment without MRI films. Id. The doctor also suggested an appointment with a pain specialist, physical therapy, and a follow up visit. Id. On December 12, 2019, Oskia-Michales scheduled Plaintiff for MRI studies and a pain therapy consult. Id.

On December 19, 2019, Plaintiff was seen by defendant Nurse Jane Doe. Id. at 41. Jane Doe took Plaintiff's vitals and abruptly returned him to his cell. Id. Plaintiff asked her why she was "kicking him out of her office" and she responded, "because [you] are done." Id. at 41–42. In Plaintiff's ambulatory health record, Jane Doe noted that Plaintiff requested medication and that she "tried to explain to IM [inmate] that per DOCCS we cannot give opioids for chronic back pain[.] IM states he is going to 'talk to his people' about this." Exs. at 29. Jane Doe also reminded Plaintiff of his upcoming appointments. Id.

On January 16, 2020, Plaintiff was seen by a specialist at the pain clinic. Id. at 42; Exs. at 40. The physician reiterated the different treatment plans available and Plaintiff chose the plan that encompassed medications rather than injections. Id.; Compl. at 43. On January 17, 2020, Oskia-Michales scheduled a follow up visit for the pain clinic, but did not provide "muscle relaxers due to abuse potential." Exs. at 43, 51.

Plaintiff wrote to Annucci and Morley detailing his complaints. Compl. at 38, 39; Exs. at 31–38. On January 31, 2020, Snider responded to Plaintiff's letter, on Morley's behalf. Exs. at 42. Snider advised that Plaintiff's medical needs were being met and noted that while Plaintiff had recently seen a pain specialist on January 16, 2020, he was "refusing spinal injections." Id.

On February 4, 2020, Plaintiff was seen by Oskia-Michales. Compl. at 44; Exs. at 46. Oskia-Michales noted in Plaintiff's medical records that he took Flexeril for seven days, without relief, and that he was previously prescribed Mobic, Elavil, and Cymbalta. Exs. at 46. She also noted that he refused injections and was argumentative. Id. She concluded that he was "over exaggerating" his pain. Id. Oskia-Michales directed officers to "remove" him from her office. Id.

On February 14, 2020, Morley again responded to Plaintiff's "recent letters" to Annucci. Compl. at 38, 39; Exs. at 44. Morley concluded that Plaintiff 's medical care was "appropriate and ongoing" and referenced the December 19, 2019 appointment with Jane Doe, the January 16, 2020 pain consultation, recently completed CT and EMG studies, and a physical therapy evaluation. Exs. at 44. Morley advised Plaintiff to continue to bring his medical concerns to the medical staff as they arose. Id.

On February 21, 2020, Plaintiff was treated at sick call. Exs. at 48. The medical provider noted that Plaintiff did not want pain injections and that he was "supposed to see neurosurgery" on March 5, 2020. Id. The provider also refused Plaintiff's request for pain medications "which are not given here[.]" Id.

    5.  *Causes of Action*

Construed liberally,[4] the Complaint contains the following: (1) Eighth Amendment deliberate medical indifference claims against Annucci related to Plaintiff's medical treatment at

---

[4]  The Court is mindful of the Second Circuit's instruction that a pleading by a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that it

Clinton C.F., Attica C.F., Southport C.F., Elmira C.F., and Auburn C.F.; (2) First Amendment retaliation claims against John Doe, Learn, Perry, Hartman, and Ruppel; (3) Fourteenth Amendment due process claims against Ruppel; (4) conspiracy claims against Perry, Wood, Hartman, and Learn; (5) Eighth Amendment deliberate medical indifference claims against Morley, Snider, Ott; and Annucci related to Plaintiff's medical treatment at Elmira C.F.; (6) Eighth Amendment deliberate medical indifference claims against Geer, defendant Physician Assistant R. Slagler, Jane Doe, Oskia-Michales, Morley, and Snider (the "Auburn Defendants") related to Plaintiff's medical treatment at Auburn C.F. See Compl.

In addition to money damages, Plaintiff seeks injunctive relief, including: (1) an order directing Geer, Oskia-Michales, Jane Doe, Slagler, Snider, Morley, Ott, and Annucci to provide him with medical treatment; (2) an order directing Annucci, Morley, and Snider and to rescind the unwritten policy; and (3) an order directing Annucci, Morley, and Snider to put a policy in place that would safeguard medical records and prevent the destruction of or tampering with medical records. Id. at 49–52. A more complete statement of Plaintiff's claims can be found in the Complaint.

### C.  Nature of Action

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which " provides a civil claim for damages against any person who, acting under color of state law, deprives another of a right, privilege or immunity secured by the Constitution or the laws of the United States." Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999). Section 1983 does not create any substantive rights; it

---

suggests. See, e.g., Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994) ("[W]e read [a pro se litigant's] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest."); Phillips v. Girdich, 408 F.3d 124, 130 (2d Cir. 2005) ("We leave it for the district court to determine what other claims, if any, [plaintiff] has raised. In so doing, the court's imagination should be limited only by [plaintiff's] factual allegations, not by the legal claims set out in his pleadings.").

provides civil litigants a procedure to redress the deprivation of rights established elsewhere. Id. (citing City of Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985)). "To prevail on a § 1983 claim, a plaintiff must establish that a person acting under the color of state law deprived him of a federal right." Id.

## IV.   DISCUSSION

### A.   Severance and Transfer of Claims Arising in the Western District of New York

In this suit, Plaintiff asserts claims related to alleged wrongdoing that occurred while he was confined at Attica C.F., Southport C.F., and Elmira C.F. Compl. These facilities are located in the Western District of New York.

Federal Rule of Civil Procedure 21 permits the Court to sever any claim against a party and allow that claim to proceed separately. See Fed. R. Civ. P. 21. In deciding whether to sever a claim, a court should consider the following:

> (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims.

Morris v. Northrop Grumman Corp., 37 F. Supp. 2d 556, 580 (E.D.N.Y. 1999).

"A claim may be severed based upon lack of a significant relationship between defendants or solely for the purpose of facilitating transfer. Where the administration of justice would be materially advanced by severance and transfer, a court may properly sever the claims against one or more defendants for the purpose of permitting the transfer of the action against other defendants." Cain v. New York State Bd. of Elections, 630 F. Supp. 221, 225–26

(E.D.N.Y. 1986) (citations omitted). "A decision to sever lies within the discretion of the Court[.]" Id. at 225 (citations omitted).

Here, Plaintiff's claims related to alleged wrongdoing that occurred while Plaintiff was confined at Attica C.F., Southport C.F., and Elmira C.F. are more appropriately heard in the Western District of New York. Plaintiff's claims arising out of his incarceration at those facilities are separate and distinct from the claims arising out of alleged wrongdoing that occurred while Plaintiff was confined at Clinton C.F. and Auburn C.F. and will require different witnesses and documentary proof.

Thus, pursuant to Rule 21 and 28 U.S.C. § 1404(a),[5] the claims that arose while Plaintiff was incarcerated at Attica C.F., Southport C.F., and Elmira C.F., along with the defendants associated with those claims, are severed from this action and transferred to the United States District Court for the Western District of New York. Thus, the following defendants, and all claims against them, will be severed and transferred to the Western District: Wood, John Doe, Perry, Hartman, Learn, Ruppel, and Ott. Additionally, the claims against Annucci that arise from Plaintiff's confinement at Attica C.F., Southport C.F., and Elmira C.F. are severed and transferred to the Western District.

---

[5] "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all the parties have consented." 28 U.S.C. § 1404(a). "[A] civil action may be brought in—(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court 's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b).

This District will retain jurisdiction over any claims that arose while Plaintiff was incarcerated at Clinton C.F. and Auburn C.F. and will therefore review the sufficiency of the Complaint as to those claims.

### B.  Eleventh Amendment

The Eleventh Amendment bars individuals from suing a state in federal court, under the principle of "sovereign immunity." U.S. Const. amend. XI; see also Hans v. Louisiana, 134 U.S. 1, 10–21 (1890); Idaho v. Coeur d 'Alene Tribe of Idaho, 521 U.S. 261, 267 (1997); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). Eleventh Amendment immunity is lost only if Congress unequivocally abrogates a state's immunity or a state expressly consents to suit. Gollomp v. Spitzer, 568 F.3d 355, 365–66 (2d Cir. 2009). Congress has not abrogated states' immunity through § 1983, see Quern v. Jordan, 440 U.S. 332, 343–45 (1979), and New York State has not waived its immunity from civil rights claims like those alleged in Plaintiff's Complaint, see, e.g., Trotman v. Palisades Interstate Park Comm'n, 557 F.2d 35, 38–40 (2d Cir. 1977); Dawkins v. State of New York, No. 93-CV-1298, 1996 WL 156764 at *2 (N.D.N.Y. 1996). Actions for damages against a state official in his or her official capacity are essentially actions against the state, and thus are barred by a state's sovereign immunity as well. See Will v. Mich. Dep't. of State Police, 491 U.S. 58, 71 (1989).

Plaintiff's claims for monetary damages against defendants, in their official capacity, are dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) as Plaintiff seeks relief from defendants—state officials—who are immune from suit under § 1983. See Kentucky v. Graham, 473 U.S. 159, 169 (1985) (a claim for damages against state officials in their official capacity is considered to be a claim against the State and is therefore barred by the Eleventh Amendment); Ying Jing Gan v. City of New York, 996 F.2d 522, 529 (2d Cir. 1993) ("To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the

state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."). Additionally, the Court dismisses these claims with prejudice as their deficiencies cannot be cured by amendment. See Lewis v. Hanson, No. 18-CV-12, 2020 WL 1812556, at *5 (N.D.N.Y. Apr. 9, 2020) (Kahn, J.) (dismissing claims barred by Eleventh Amendment immunity with prejudice because "amendment could not cure [them]").

### C.  Eighth Amendment

Claims that prison officials have intentionally disregarded an inmate's medical needs fall under the umbrella of the Eighth Amendment's prohibition against cruel and unusual punishments. Estelle v. Gamble, 429 U.S. 97, 102, 104 (1976). The Eighth Amendment prohibits punishment that involves the "unnecessary and wanton infliction of pain" and is incompatible with "the evolving standards of decency that mark the progress of a maturing society." Id.; see also Whitley v. Albers, 475 U.S. 312, 319 (1986) (citations omitted). While the Eighth Amendment "does not mandate comfortable prisons . . . neither does it permit inhumane" treatment of those in confinement. Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citing Rhodes v. Chapman, 452 U.S. 337, 349 (1981)).

"In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (quoting Estelle, 429 U.S. at 104). "First, the alleged deprivation must be, in objective terms, sufficiently serious," Chance, 143 F.3d at 702 (internal quotation marks and citations omitted), "in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists," Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996). "Second, the defendant must act with a sufficiently culpable state of mind." Id. This second element is satisfied if the defendant "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the

14

inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." Chance, 143 F.3d 698, 702 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

An inmate who disagrees with the physician over the appropriate course of treatment has no claim under § 1983 if the treatment provided is "adequate." Chance, 143 F.3d at 703. "[D]isagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention are not adequate grounds for a section 1983 claim." Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001).

1.   Clinton C.F.

a.   Statute of Limitations

Plaintiff asserts Eighth Amendment claims arising out of his confinement at Clinton C.F. between 2013 and 2016. In § 1983 actions, the applicable statute of limitations is the State's "general or residual statute for personal injury actions." Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir. 2002) (quoting Owens v. Okure, 488 U.S. 235, 249–50 (1989)). In New York, a three-year statute of limitations applies for personal injury actions and, thus, to § 1983 actions. Id. Although State law provides the relevant limitations period, federal law determines when a § 1983 action accrues, which has been held to be the time "when the plaintiff knows or has reason to know of the harm." Connolly v. McCall, 254 F.3d 36, 41 (2d Cir. 2001) (citation omitted). Hence, in determining when a particular claim accrues, courts must focus on when a "plaintiff becomes aware that he is suffering from a wrong for which damages may be recovered in a civil action." Singleton v. City of New York, 632 F.2d 185, 192 (2d Cir. 1980). In "rare and exceptional" cases, the doctrine of equitable tolling or equitable estoppel may be invoked to

defeat a defense that the action was not timely filed. Abbas v. Dixon, 480 F.3d 636, 642 (2d Cir. 2007).

Plaintiff initiated this action, at the earliest, on March 26, 2020.[6] Compl. at 52. Insofar as Plaintiff alleges wrongdoing that occurred at Clinton C.F. prior to March 26, 2017, those claims must be dismissed as untimely unless Plaintiff is able to demonstrate that the limitations period should be tolled. Abbas, 480 F.3d at 640–41. Here, Plaintiff has not presented allegations suggesting that the statute of limitations must be tolled. See Compl. However, it is possible that Plaintiff could allege facts suggesting that the equitable tolling applies to preserve these claims. Therefore, Plaintiff's claims regarding the alleged misconduct at Clinton C.F. are dismissed with leave to amend.

### b.  Personal Involvement

Even assuming that Plaintiff's Eighth Amendment claims arising out of events that occurred at Clinton C.F. were timely, Plaintiff has failed to plead facts suggesting that Annucci was personally involved in Plaintiff's medical treatment there.

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)). "[A] Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.'" Austin v. Pappas, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting Bass v. Jackson, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted). "[V]icarious liability is inapplicable to . . . § 1983 suits." Iqbal, 556 U.S. at 676.

---

[6]  Under the "prison mailbox rule," the date of filing is deemed to be the date that the prisoner delivered the complaint to a prison guard for mailing. See Houston v. Lack, 487 U.S. 266, 276 (1988).

A supervisory official, such as Annucci, may not be held liable merely because he "held a high position of authority." See Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996); see also Richardson v. Goord, 347 F.3d 431, 435 (2d Cir. 2003) ("[M]ere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim."). Rather, supervisory personnel may be considered "personally involved" in an alleged constitutional violation only if they: 1) directly participated in the violation; 2) failed to remedy that violation after learning of it through a report or appeal; 3) created, or allowed to continue, a policy or custom under which the violation occurred; 4) were grossly negligent in managing subordinates who caused the violation; or 5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).[7] "Once a plaintiff properly alleges that a defendant was personally involved in a constitutional deprivation, [he] 'must also establish that the supervisor's actions were the proximate cause of the plaintiff's constitutional deprivation.'" Harrell v. New York State Dep't of Corr. & Cmty. Supervision, No. 15-CV-7065, 2019 WL 3821229, at *7 (S.D.N.Y. Aug. 14, 2019) (quoting Raspardo v. Carlone, 770 F.3d 97, 116 (2d Cir. 2014)).

---

[7]  The Second Circuit has not yet addressed how the Supreme Court's decision in Iqbal affected the standards in Colon for establishing supervisory liability. See Grullon v. City of New Haven, 720 F.3d 133, 139 (2d Cir. 2013) (noting that Iqbal may have "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations[,]" but not reaching the impact of Iqbal on Colon because the complaint "did not adequately plead the Warden's personal involvement even under Colon"); Hogan v. Fischer, 738 F.3d 509, 519 n.3 (2d Cir. 2013) (expressing "no view on the extent to which [Iqbal] may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations . . . .") (citing Grullon, 720 F.3d at 139). "The Court need not put its oar in the water concerning the continued vitality of Colon, however, because Plaintiff's complaints founder even under Colon." See Samuels v. Fischer, 168 F. Supp. 3d 625, 635–36 (S.D.N.Y. 2016).

Here, because Plaintiff claims that Annucci created an unwritten policy, he attempts to plead personal involvement under the third <u>Colon</u> standard. As presently plead, the Complaint contains no facts or details related to the policy nor, more problematically, any non-conclusory allegations suggesting that Annucci is responsible for the alleged promulgation of the policy. Without such facts, the Court finds that Plaintiff has failed to plead a cognizable constitutional claim against Annucci. <u>See</u> <u>Williams v. Adams</u>, No. 18-CV-1041, 2019 WL 350215, at \*8 (N.D.N.Y. Jan. 29, 2019) (dismissing Eighth Amendment claim against supervisory defendant based upon the defendant's supposed enactment of an unwritten policy related to prescription pain medication because the plaintiff failed to plead facts related to the scope of the policy); <u>Doe v. New York</u>, 97 F. Supp. 3d 5, 16 (E.D.N.Y. 2015) (dismissing complaint against supervisory medical personnel where "[t]he allegations in the . . . Complaint that . . . [these] supervisors[] indifferently or intentionally enforced the [unwritten] policy . . . is conclusory."); <u>Banks v. Annucci</u>, 48 F. Supp. 3d 394, 419 (N.D.N.Y. 2014) ("[The] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights.") (internal quotation marks omitted).

### c.   Injunctive Relief

To the extent that Plaintiff seeks injunctive relief related to his confinement at Clinton C.F., "[i]t is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility." <u>Candelaria v. Greifinger</u>, No. 96-CV-17, 1998 WL 312375, at \*2 (N.D.N.Y. June 8, 1998) (quoting <u>Prins v. Coughlin</u>, 76 F.3d 504, 506 (2d Cir. 1996)); <u>Salahuddin v. Goord</u>, 467 F.3d 263, 272 (2d Cir. 2006) (indicating that the transfer of an inmate Plaintiff complaining of civil rights violations out of the prison facility in which those violations were alleged to have occurred moots any claim for injunctive relief against prison officials of the transferring facility). Accordingly, Plaintiff's claims for injunctive relief related

to Clinton C.F. would also be dismissed on these grounds. See Jones v. Smith, No. 09-CV-1058, 2015 WL 5750136, at *8 (N.D.N.Y. Sept. 30, 2015) (dismissing claims for injunctive relief after the Plaintiff's transfer to a different facility).

        2.   *Auburn C.F.*

Plaintiff alleges that the Auburn Defendants were deliberately indifferent to his serious medical needs because they implemented the "unwritten policy," formulated by Annucci, that prohibited inmates in the general population from receiving opioids to treat legitimate medical needs. See Compl. at 33, 36. Plaintiff also claims that these same defendants failed to provide him with adequate medical treatment because they refused to provide pain medication, failed to adopt the specialists' recommendations, and made false entries in his medical records. See id. at 34, 36–38, 40–42, 44.

Even assuming that Plaintiff suffered from a sufficiently serious medical condition, the Complaint is devoid of any allegations that plausibly suggest that the Auburn Defendants acted with deliberate indifference to Plaintiff's medical needs. With respect to Plaintiff's allegations related to the Auburn Defendants' failure to adequately treat him, differences in opinions between a doctor and an inmate as to the appropriate pain medication do not support a claim that the doctor was deliberately indifferent to the inmate's serious medical needs. See, e.g., Evan v. Manos, 336 F. Supp. 2d 255, 262 (W.D.N.Y. 2004) (explaining that an inmate's view that the doctor should have prescribed something stronger than Advil does not give rise to an issue of fact as to whether his constitutional rights were violated); Veloz v. New York, 339 F. Supp. 2d 505, 525 (S.D.N.Y. 2004) (concluding that an inmate's disagreement with his medical provider about whether he needed something stronger than Tylenol for his back pain did not constitute deliberate indifference to a serious medical need); Morrison v. Mamis, 08-CV-4302, 2008 WL 5451639 (S.D.N.Y. Dec. 18, 2008) (holding that a doctor's refusal to switch an inmate's pain-

killer medication did not give rise to an deliberate indifference claim). Moreover, the Auburn

Defendants' disagreement with the specialists regarding the appropriate medication does not

support a deliberate indifference claim. See Ortiz v. Makram, 96-CV-3285, 2000 WL 1876667 at

*9–10 (S.D.N.Y. Dec. 21, 2000) (primary prison doctor was not deliberately indifferent to an

inmate-patient's serious medical needs when, after reviewing the report of a consulting urologist,

he determined, in his medical judgment, to prescribe a different pain killer than that

recommended by the specialist). Plaintiff's "preferred choice of medication" amounts to a

disagreement with treatment, which does not give rise to a constitutional claim. See Williams v.

Adams, No. 18-CV-1041, 2019 WL 350215, at *5 (N.D.N.Y. Jan. 29, 2019) (dismissing a

deliberate indifference claim based upon an assertion that the defendant's failed to prescribe

morphine-based pain medications was hampered because of an unwritten prison and/or DOCCS

policy regarding a restriction against prescribing inmates narcotic pain medications).

Moreover, the facts and exhibits submitted by Plaintiff do not suggest that Defendants

acted with the requisite level of culpability. From June 2019 through February 2020, Plaintiff

received regular medical treatment for his complaints, including sick call visits, consultations

with various specialists, radiological studies, and prescription medication.

For these reasons, Plaintiff's medical indifference claims against Geer, Jane Doe, Oskia-

Michales, and Slagler are dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)

and 1915A(b) for failure to state a claim upon which relief can be granted.[8]

---

[8]  Additionally, the Court notes that while Plaintiff names Slagler as a defendant in the
caption of the Complaint, see Compl. at 1, Plaintiff does not attribute any of the alleged
constitutional violations to Slagler. In the absence of factual allegations that plausibly suggest
that Slagler was personally involved in conduct that violated Plaintiff's constitutional rights, the
Complaint fails to state a cognizable claim against her. See Cipriani v. Buffardi, No. 06-CV-889,
2007 WL 607341, *1 (N.D.N.Y. Feb. 20, 2007) ("Dismissal is appropriate where a defendant is
listed in the caption, but the body of the complaint fails to indicate what the defendant did to the

With respect to Morley, Snider, and Annucci, the Court concludes that, because Plaintiff has failed to allege a cognizable denial of medical care claim against any staff at Auburn C.F., his supervisory claims against Morley, Snider, and Annucci must also be dismissed. See Toole v. Connell, No. 04-CV-724, 2008 WL 4186334, at *1, 7 (N.D.N.Y. Sep. 10, 2008) (noting that a supervisory defendant cannot be liable for failing to investigate or correct conduct that has already been found to be not actionable under § 1983); Linares v. Mahunik, No. 05-CV-625, 2006 WL 2595200, at *11 (N.D.N.Y. Sept. 11, 2006) (holding that the plaintiff could not "sustain a supervisory liability claim as there was no wrong for [the supervisor-defendant] to remedy since there [was] no constitutional violation").

## V.      MOTION FOR PRELIMINARY INJUNCTION

Plaintiff moves for a preliminary order directing Annucci, Morley, Snider, Oskia-Michales, Geer, and Jane Doe to provide him with "adequate pain killer and muscle relaxer medication," to reschedule Plaintiff's appointments for MRI studies, and to schedule follow-up appointments with pain and neurosurgical clinics.[9] Mot. for Preliminary Injunction at 2.

Preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Moore v. Consol. Edison Co. of N.Y., 409 F.3d 506, 510 (2d Cir. 2005) (quoting Mazurek v. Armstrong, 520 U.S. 968, 972 (1997)). To prevail on a motion for preliminary injunctive relief, a plaintiff must demonstrate irreparable harm and either a substantial likelihood of success on the merits of the claim, or sufficiently serious questions going to the merits and a balance of hardships tipping

---

plaintiff.") (citation omitted). Therefore, Plaintiff's claims against Slagler are dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) for failure to state a claim upon which relief can be granted.

[9]  Because all claims against Ott have been transferred to the Western District of New York, the Court takes no position on Plaintiff's request for injunctive relief against Ott. See Mot. for Preliminary Injunction at 2–3.

decidedly in his favor. Citigroup Global Markets, Inc. V. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30, 35 (2d Cir. 2010); Cacchillo v. Insmed, Inc., 638 F.3d 401, 405–06 (2d Cir. 2011). Moreover, when the moving party seeks a "mandatory injunction that alters the status quo by commanding a positive act," the burden is even higher. Cacchillo, 638 F.3d at 406; see also Jolly v. Coughlin, 76 F.3d 468, 473 (2d Cir. 1996). Thus, a mandatory preliminary injunction "should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." Citigroup, 598 F.3d at 35 n.4 (internal quotation marks omitted). Additionally, "[t]he district court has wide discretion in determining whether to grant a preliminary injunction." Moore, 409 F.3d at 511.

In this instance, without a claim that survives § 1915 sufficiency review, Plaintiff cannot establish that he has a likelihood of success on the merits of his claims or sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward him. See Fontaine v. Young, No. 07-CV-634, 2007 WL 4180712, at *1 (W.D.N.Y. Nov. 19, 2007) (denying request for preliminary injunction because, under § 1915 review, "the complaint does not state a claim upon which relief can be granted"). Therefore, the Court denies Plaintiff's motion for preliminary injunctive relief without prejudice to file a new motion after Plaintiff has submitted an Amended Complaint and it has been accepted for filing by the Court.

## VI.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Plaintiff's IFP Application (Dkt. No. 2) is **GRANTED**;[10] and it is further

---

[10]  Plaintiff should note that, although the Court has granted his IFP Application, he must still pay any fees that he incurs in this action, including copying and/or witness fees.

NAV

**ORDERED**, that the Clerk provide the Superintendent of the facility designated by Plaintiff as his current location with a copy of Plaintiff's Inmate Authorization Form (Dkt. No. 3), and notify the Superintendent that this action has been filed and that Plaintiff is required to pay the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915 out of periodic withdrawals from his inmate account; and it is further

**ORDERED**, that the Clerk of the Court provide a copy of Plaintiff's Inmate Authorization Form to the Financial Deputy of the Clerk's Office; and it is further

**ORDERED**, that pursuant to Fed. R. Civ. P. 21 and 28 U.S.C. § 1404(a), the following defendants and all claims against them, are severed and transferred to the Western District of New York: Wood, John Doe, Perry, Hartman, Learn, Ruppel, and Ott; and it is further

**ORDERED**, that no ruling is made as to the sufficiency of the Complaint with respect to the claims that have been severed and transferred to the Western District, leaving that determination to the Western District of New York; and it is further

**ORDERED**, that the Clerk shall advise the Clerk of the Western District of New York, in writing, of the entry of this Decision and Order and provide the Clerk with a certified copy of this Decision and Order and of the docket report for this action, together with all information necessary for the Clerk of the Western District of New York to electronically access the documents filed in this action; and it is further

**ORDERED**, that the fourteen-day waiting period provided for in Local Rule 83.6 is hereby waived; and it is further

**ORDERED**, that the Clerk shall remove the following defendants from the docket: Wood, John Doe, Perry, Hartman, Learn, Ruppel, and Ott;[11] and it is further

**ORDERED**, that Plaintiff's Eighth Amendment deliberate medical indifference claims against Geer, Slagler, Jane Doe, Oskia-Michales, Morley, Snider, and Annucci related to Plaintiff's medical treatment at Auburn C.F., and his Eighth Amendment deliberate medical indifference claims Annucci related to his medical treatment at Clinton C.F., are **DISMISSED without prejudice**; and it is further

**ORDERED**, that Plaintiff's official capacity claims against Geer, Slagler, Jane Doe, Oskia-Michales, Morley, Snider, and Annucci are **DISMISSED with prejudice**; and it is further

**ORDERED**, that Plaintiff's Motion for a Preliminary Injunction (Dkt. No. 4) is **DENIED**; and it is further

**ORDERED**, that if Plaintiff wishes to proceed with this action, he must file an Amended Complaint as set forth above within **thirty days** from the date of the filing of this Decision and Order;[12] and it is further

**ORDERED**, that if Plaintiff timely files an Amended Complaint, this matter be returned to the Court for further review; and it is further

**ORDERED**, that if Plaintiff fails to timely file an Amended Complaint as directed above, the Clerk shall enter judgment indicating that this action is **DISMISSED without**

---

[11]  Claims against these defendants have not been dismissed; they have been transferred to the Western District for consideration.

[12]  If Plaintiff chooses to file an amended complaint, he should do so in accordance with Federal Rules of Civil Procedure 8, 10, and 15. The amended complaint must bear his original signature and—because it will supersede and replace the original Complaint in its entirety—must be a complete pleading that does not rely upon or incorporate by reference the original Complaint. Plaintiff must also include a short and plain statement of the facts that support his claim.

**prejudice** without further order of this Court pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1) for failure to state a claim upon which relief may be granted. In that event, the Clerk is directed to close this case; and it is further

ORDERED, that the Clerk serve a copy of this Decision and Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:      June 15, 2020
            Albany, New York

Lawrence E. Kahn
Senior U.S. District Judge