UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

FRANCISCO SANTOS,

       Plaintiff,

  v.

JEFFREY P. WOOD, *C.O.*, JOHN DOE #1, *SGT.*, TIMOTHY A. PERRY, *C.O.*, J. HARTMAN, *C.O.*, CHRISTOPHER M. LEARN, *SGT.*, ROBERT A. RUPPEL, *PSA.*, ANTHONY J. ANNUCCI, *AC.*, and KEVIN W. OTT, *CP.*,

       Defendants.

20-CV-721
ORDER

---

## **INTRODUCTION**

The *pro se* plaintiff, Francisco Santos, was a prisoner confined at the Auburn Correctional Facility ("Auburn") when he filed this action. He asserts claims under 42 U.S.C. § 1983 and alleges that officials at the Elmira Correctional Facility ("Elmira") and the New York State Department of Corrections and Community Supervision ("DOCCS") have violated his rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution. Docket Item 1.[1] He also has moved to proceed *in forma pauperis* (that is, as a person who should have the prepayment of the

---

[1] Santos originally filed this action in the United States District Court for the Northern District of New York against officials from Elmira and Auburn, as well as against state-level leadership from DOCCS. But on June 15, 2020, Hon. Lawrence E. Kahn severed and transferred to this court Santos's claims against all Elmira defendants, as well as his related claims against DOCCS defendant Anthony J. Annucci, under Rule 21 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1404(a). *See* Docket Item 6.

ordinary filing fee waived because he cannot afford it).  Docket Item 2.  And he has moved to preliminarily enjoin the defendants from denying him certain medications.  Docket Item 4.

Because the plaintiff meets the statutory requirements of 28 U.S.C. § 1915(a) and has filed the required authorization and certification, Docket Items 2 and 3, the Court grants his motion to proceed *in forma pauperis*.  Therefore, under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a), the Court screens the complaint.  For the reasons that follow, all of the plaintiff's claims may proceed.

## **DISCUSSION**

Section 1915 "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims."  *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)).  A court shall dismiss a complaint in a civil action in which a prisoner seeks redress from a governmental entity, or an officer or employee of a governmental entity, if the court determines that the action (1) fails to state a claim upon which relief may be granted or (2) seeks monetary relief against a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915A(b)(1)-(2). Generally, a court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim."  *Abbas*, 480 F.3d at 639 (citation omitted); *see also Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("A *pro se* complaint is to be read liberally.  Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."

2

(quoting *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 795 (2d Cir. 1999))). But leave to amend pleadings may be denied when any amendment would be "futile." *Id.*

I. **SCREENING THE COMPLAINT**

In evaluating the complaint, this Court accepts all factual allegations as true and draws all inferences in the plaintiff's favor. *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999). "Specific facts are not necessary," and the plaintiff "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (alteration in original) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Boykin v. Keycorp*, 521 F.3d 202, 213 (2d Cir. 2008) ("[E]ven after *Twombly*, dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases."). Although "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir. 2004), even pleadings submitted *pro se* must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure, *see Wynder v. McMahon*, 360 F.3d 73, 76 (2d Cir. 2004).

The Court assumes familiarity with the factual and procedural background of this action, as set forth in Judge Kahn's comprehensive screening order, and refers to specific details only as necessary to explain its decision. *See* Docket Item 6 at 3-10. Briefly, Santos was injured in a motor vehicle accident prior to his incarceration and had a metal rod surgically inserted into his right femur. While incarcerated, he suffered ongoing pain from the accident, as well as complications related to the rod. Santos has sued various Elmira and DOCCS officials for monetary and injunctive relief, asserting

3

that they acted unconstitutionally in response to his chronic pain. More specifically, he has sued Anthony J. Annucci, DOCCS Commissioner, and Kevin W. Ott, M.D., under the Eighth Amendment for deliberate indifference to his serious medical needs; Sergeant John Doe # 1 and correctional officers Jeffrey P. Wood, Timothy A. Perry, J. Hartman, and Christopher M. Learn under the First Amendment for retaliating against him in response to his filing various grievance complaints; and correctional officer Robert A. Ruppel under the Fourteenth Amendment for denying him due process of law in the course of a disciplinary hearing. *See* Docket Item 1 at 2-7, 19-32.

## II.   SECTION 1983 CLAIMS

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

### A.   Official-Capacity Claims

"The Eleventh Amendment bars suits against states and their officials unless the state consents to suit, Congress abrogates the state's immunity, or the case falls within the *Ex parte Young* exception [for prospective injunctive relief]." *Nat'l Ass'n for Advancement of Colored People v. Merrill*, 939 F.3d 470, 475 (2d Cir. 2019). "New York has not waived its immunity, nor has Congress abrogated it." *Li v. Lorenzo*, 712 F.

App'x 21 (2d Cir. 2017) (summary order) (citing *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d Cir. 1977); *Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990)).

Santos has sued all of the named defendants in both their official and unofficial capacities. *See* Docket Item 1 at 2-7. Santos's official-capacity claims for monetary damages are barred by the Eleventh Amendment and accordingly dismissed because leave to amend would be "futile." *See Cuoco v*, 222 F.3d at 112. His official-capacity claims against defendants Annucci and Ott for injunctive relief are not barred by the Eleventh Amendment, but they nevertheless are barred for the separate reasons discussed in section III below. All claims against the defendants in their official capacities therefore are dismissed.

### B.     Deliberate Indifference Claims against Annucci and Ott (Eighth Amendment Claims)

A claim of inadequate medical care rises to the level of a constitutional violation only when a defendant, operating under color of law, was deliberately indifferent to the plaintiff's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *see also Ross v. Kelly*, 784 F. Supp. 35, 43-44 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir. 1992). "A serious medical condition exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'" *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

An isolated failure to provide medical treatment, without more, is generally not actionable unless the surrounding circumstances suggest a degree of

5

"deliberate[ness]," rather than inadvertence, in the failure to render meaningful treatment.  *See Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987).

> Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.  In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (quoting *Estelle*, 429 U.S. at 106 & n.14).  At the same time, "while 'mere medical malpractice' is not tantamount to deliberate indifference, certain instances of medical malpractice may rise to the level of deliberate indifference," such as "when the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces a conscious disregard of a substantial risk of serious harm."  *Id.* (citation omitted).

Here, Santos alleges that defendant Annucci promulgated an "[u]nwritten [p]olicy" that resulted in Santos's being denied narcotic medications.  *See* Docket Item 1 at 11-12.  While incarcerated between 2013 and 2015, Santos was prescribed Percocet, a narcotic pain relief medication.  *See id.* at 11.  But in December 2015, his medical providers stopped providing this medication "due to a[n] '[u]nwritten [p]olicy' that ha[d] been authorized by [Annucci], stating that '[i]nmates . . . held under the [c]ustody of [DOCCS] and in [the g]eneral [p]opulation shall not be provided with 'opioid,' '[n]arcotic,' [and]/or '[a]busive[-]potential' medications."  *Id.*  As a consequence of this policy, and notwithstanding Santos's persistent complaints of pain, DOCCS officials at Clinton Correctional Facility—and later at Attica, Elmira, Southport, and Auburn Correctional

6

Facilities[2]—"refused to provide [Santos] with" the previously-prescribed medications, and Santos "[was] left suffering from . . . increasing[ ] [c]hronic [p]ain [and] [m]uscle [s]tiffness." *Id.* at 12-15.

To establish liability against a prison official under section 1983, a plaintiff must allege that individual's personal involvement in the alleged constitutional violation; it is not enough to assert that the defendant is a "link[ ] in the prison['s] chain of command." *See McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004); *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). Moreover, the theory of *respondeat superior* is not available in a section 1983 action. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). But a supervisory prison official can be found to be personally involved in an alleged constitutional violation in one of several ways:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) *the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom*, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon*, 58 F.3d at 873 (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)) (emphasis added).

Santos has adequately alleged that Annucci was personally involved in denying Santos certain medical treatment through his "policy or custom" of prohibiting the provision of all narcotic drugs. The question is whether that alleged policy "result[ed] in

---

[2] This severed action concerns Santos's claims against Annucci only as they relate to his time at Attica, Elmira, and Southport.

. . . the unnecessary and wanton infliction of pain.'" *Harrison*, 219 F.3d at 136 (citation omitted)).

To that end, Santos also alleges that defendant Dr. Ott failed to provide constitutionally-sufficient medical care. In March 2019, Santos was evaluated by Dr. Ott for his "increasing[ ] [p]ain [and] [m]uscle [s]tiffness . . . on his back and right leg throughout the day on a daily basis." Docket Item 1 at 29. Dr. Ott "stated and informed [Santos] that the adequate [t]reatment [p]lan for him . . . would consist of [p]ain [k]iller [and] [m]uscle [r]elaxer [m]edication[,] as it ha[d] been prescribed to [Santos] during [a] past consultation." *Id.* at 30. Dr. Ott also "stated and informed [Santos] that [Santos] [was] already schedule[d] for appointments" for various diagnostic testing, including an MRI and CT scan, and to meet with various specialists, including a neurosurgeon and a pain medicine specialist. *Id.* But after Santos "made a verbal complaint to [Dr. Ott] about [Annucci's] '[u]nwritten [p]olicy[,]' . . . [Dr. Ott] immediately cancelled [and] denied" the appointments and rescinded his prescriptions. *Id.* at 30-31. Dr. Ott stated: "Since you . . . remind me, I . . . don't even know how you got [these appointments], [given that] we are not even allowed to provide you with [n]arcotic [m]edication. [The appointments] w[ould] be redundant, [and a] waste of time and money." *Id.* at 31.

Santos has adequately alleged that Annucci and Dr. Ott deliberately caused him pain by denying him access to certain prescribed medications. As alleged in the complaint, Dr. Ott was aware of Santos's pain and prescribed certain medications to treat that pain, but he then refused to provide those medications—a refusal based not on a medical assessment but instead on a policy promulgated by Annucci that failed to consider inmates' unique medical needs. Santos's allegations thus go beyond a dispute

8

about the proper treatment plan: he alleges that a DOCCS policy or custom leaves medical providers without the discretion to prescribe indicated medications, and that this blanket policy caused him needless suffering.

Although Santos does not point to any official statement evidencing the existence of this policy, that deficiency is not fatal. An unofficial custom, by its nature, will not be supported by official documentation but instead by practice. And in that respect, Santos alleges that officials at five different DOCCS facilities cited Annucci's "policy" in refusing to provide him narcotic medications. At this early stage, that allegation is sufficient. Santos's Eighth Amendment claims against Annucci and Dr. Ott therefore may proceed.

### C.    Retaliation Claims Against Doe, Wood, Perry, Hartman, and Learn (First Amendment Claims)

To establish a claim for retaliation under section 1983, a plaintiff must show that (1) he engaged in constitutionally protected speech or conduct, (2) the defendants took adverse action against him, and (3) there was a causal connection between the protected speech or conduct and the adverse action. *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009); *see also Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir. 1987) ("[A] claim for relief may be stated under section 1983 if otherwise routine administrative decisions are made in retaliation for the exercise of constitutionally protected rights." (citing *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (per curiam))). To prove the final prong, the plaintiff "bears the burden of showing . . . that the protected conduct was a substantial or motivating factor in the prison officials' decision to [take the action they did against the] plaintiff." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (citing *Mount Healthy Sch. Dist. v. Doyle*, 429 U.S. 274, 287 (1977)). The plaintiff may rely on circumstantial evidence to prove causation. *See Colon*, 58 F.3d at 872-73; *see also*

9

*Espinal*, 558 F.3d at 129 ("A plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action.").

"Ordinarily a plaintiff can survive a motion to dismiss based on the pleadings so long as he has alleged facts, that if proven, would support a cause of action." *Johnson v. Eggersdorf*, 8 F. App'x 140, 144 (2d Cir. 2001) (summary order). "However, because of the 'ease with which claims of retaliation may be fabricated, [courts] examine prisoners' claims of retaliation with skepticism and particular care.'" *Id.* (quoting *Colon*, 58 F.3d at 872). "Because of the potential for abuse, '[courts] insist[ ] on a higher level of detail in the pleadings.'" *Id.* (quoting *Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir. 1987)). In the Second Circuit,

> prisoner retaliation claims [fall] into three categories: (1) "a retaliation claim supported by specific and detailed factual allegations which amount to a persuasive case [and] ought usually to be pursued with full discovery;" (2) "a complaint which alleges facts giving rise to a colorable suspicion of retaliation[, and] will support at least documentary discovery;" [or] (3) "a complaint which alleges retaliation in wholly conclusory terms [and] may safely be dismissed on the pleadings alone[. In the final category], the prisoner has no factual basis for the claim other than an adverse administrative decision and the costs of discovery should not be imposed on defendants."

*Id.* (quoting *Flaherty v Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

Here, Santos alleges that defendants Doe, Wood, Perry, Hartman, and Learn retaliated against him for his filing various grievance complaints. *See* Docket Item 1 at 15. While incarcerated at Elmira in November 2018, Santos filed two grievance complaints, neither of which appears to have directly concerned Santos's ongoing health issues. *See* Docket Item 1-1 at 53 (alleging that "Debra Fuller at Attica C.F. is consciously [and] purposely refusing to timely [and] adequately file, process [and]/or [t]ransmit [Santos's] grievances [and] . . . [a]ppeal to the [n]ext [s]tages"); *id.* at 55

10

(alleging that "Southport Medical PA Ben Oakes . . . retaliate[d] against [Santos] by failing to provide [him] with medical care"). Doe collected the grievances from the inmate deposit box, *see* Docket 1 at 15, but they never reached the Inmate Grievance Committee, *see* Docket Item 1-1 at 57. After Santos resubmitted both grievances, Doe, Wood, and Learn went to Santos's cell, and Doe "informed [Santos] that the grievance[s] . . . ha[d] not be[en] filed and w[ould] not be filed as long as [Doe] [was] working at [Elmira]." Docket Item 1 at 17. Doe went on:

> "I . . . will give you some advi[c]e and hope you take it. I will not be processing [these] grievances and instead, I will thr[ow] them in the garbage can. I highly advi[s]e you to not make any other attempts to file them or even use the grievance [p]rogram here at [Elmira], because if you do, [it] is going to upset me that you are going above my head, again, see, when I get mad, [a lot] of bad things take place. Look around us, we don't have cameras here . . . like Attica does. So, don't start ruffling the feathers here kid, if I find out you are attempting to file [these] grievances, you will be finding out the ha[r]d way how we do things at Elmira."

*Id.* at 18. Santos did not file the grievances. *Id.*

About a month later, however, Santos submitted a "[h]arrassment [c]omplaint" against Doe. *Id.* Over the course of the next three months, defendants Wood and Learn "verbally harass[ed] [and] antagoniz[ed] [Santos]." *Id.* at 19. On March 15, 2019, defendants Wood and Perry, accompanied by defendants Learn and Hartman, conducted a frisk search of Santos. *Id.* at 20. They did not recover any contraband, so they "conspire[d] to falsify a[n] [inmate misbehavior report] against [Santos]." *Id.* The same four officers later searched Santos again and, although they did not find any contraband, prepared a report asserting that they had found a "black metal ice pick type weapon sharpened to a point." *Id.* at 20. Based on that report, Santos was placed in the Special Housing Unit ("SHU"). *Id.*

11

Defendant Ruppel held a disciplinary hearing over the course of several days in March and April 2019. On April 15, 2019, Ruppel found Santos guilty of possessing a weapon and sanctioned him with 180 days of confinement in the SHU. *Id.* at 26. But Santos appealed the finding, and on June 3, 2019, the finding was reversed because "[p]otentially relevant documentary evidence and witnesses [were] inadequately addressed for [the] record.'" *Id.* at 26. Santos nevertheless spent a total of 90 days in the SHU. *Id.* at 27.

Santos thus alleges that he engaged in protected activity, that the protected activity and adverse action were relatively close in time, and that the defendants did not have a non-retaliatory reason for the adverse action. The complaint therefore alleges "facts giving rise to a colorable suspicion of retaliation," *see Johnson*, 8 F. App'x at 144, and Santos's First Amendment claims against Doe, Wood, Perry, Hartman, and Learn may proceed.

### D.   Procedural Due Process Claim against Ruppel (Fourteenth Amendment Claim)

To state a due process claim with respect to a prison disciplinary hearing, an inmate-plaintiff must allege that (1) "the confinement or restraint complained of create[d] an 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life,'" *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)); and (2) "the state ha[d] granted its inmates, by regulation or by statute, a protected liberty interest in remaining free from that confinement or restraint," *id.* (quoting *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996)). The inmate then must show that in imposing the confinement or restraint, the defendant denied the inmate some aspect of the process he was due, namely "[i] advance written notice of the

12

charges; [ii] a fair and impartial hearing officer; [iii] a reasonable opportunity to call witnesses and present documentary evidence; [and iv] a written statement of the disposition, including supporting facts and reasons for the action taken," see *Luna v. Pico*, 356 F.3d 481, 487 (2d Cir. 2004) (citation omitted); see also id. at 488 ("[T]he requirements of due process are satisfied if *some evidence* supports the decision by the prison disciplinary board . . . ." (alteration in original) (quoting *Superintendent v. Hill*, 472 U.S. 445, 455 (1985))).

Here, Santos alleges that defendant Ruppel "manipulate[d] the hearing procedure to help cover[ ] up [for] defendants [Doe, Perry, Wood, Hartman, and Learn]." Docket Item 1 at 25. More specifically, he claims that Ruppel ignored the testimony of two witnesses who claimed that neither of the March 15, 2019 searches produced contraband. *Id.*

Santos has adequately alleged that Ruppel denied him due process of law. Santos's claim that Ruppel was not impartial and that his decision was not supported by "some evidence" is corroborated by DOCCS's reversal of the decision. *See id.* at 26. And the discipline Ruppel imposed—180 days in the SHU, ultimately shortened to 90 days—reasonably could constitute an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life," see *Cruz*, 202 F.3d at 597 (citation omitted). Although the Second Circuit has explained that "SHU confinements of fewer than 101 days" generally can meet this threshold only "if the conditions were more severe than the normal SHU conditions . . . or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical," it also has "explicitly avoided a bright line rule that a certain period of SHU confinement

13

automatically fails to implicate due process rights." *Palmer v. Richards*, 364 F.3d 60, 64-65 (2d Cir. 2004) (emphasis added).  Because 90 days approaches the benchmark discussed in *Palmer*, and because the Court does not yet have the benefit of a "fully developed record" about the conditions of Santos's confinement in the SHU, the Court will not *sua sponte* dismiss Santos's serious allegations.  Santos's procedural due process claim against Ruppel may proceed.

### E. John Doe Defendants

With respect to the First Amendment retaliation claims asserted against John Doe No. 1[3] and "J. Hartman," and pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997) (per curiam), DOCCS shall ascertain the full names of John Doe No. 1 and "J. Hartman."  DOCCS also shall provide an address where these defendants may be served.  DOCCS need not undertake to defend or indemnify these individuals at this juncture.  This order merely provides a means by which Santos may name and properly serve the defendants as instructed by the Second Circuit in *Valentin*.

DOCCS shall produce the information specified above regarding the identities of John Doe No. 1 and "J. Hartman" **within 35 days of the date of this order**.  The information shall be forwarded to the Court's *Pro se* Unit, United States District Court, 2120 Kenneth B. Keating Federal Building, 100 State Street, Rochester, New York 14614.  Once this information is provided, Santos's complaint shall be deemed

---

[3] The complaint indicates that "John Doe #1" was a correctional officer at Elmira with the rank of sergeant who "was designated as the area [s]upervisor [s]ergeant for the Inmate Grievance Committee Program . . . between November 13, 2018, and April 30, 2019."  Docket Item 1 at 2.  "J. Hartman" was an Elmira correctional officer "[w]hose designated post was as G-Block Third Officer on March 15, 2019., for the 7-3 shift."  *Id.* at 3.

amended to reflect the names of the defendants in place of John Doe No. 1 and "J. Hartman," and the United States Marshals Service shall effect service.

### III.     REQUEST FOR PRELIMINARY INJUNCTIVE RELIEF

Santos also asks this Court to order preliminary injunctive relief.  Docket Item 4. "A preliminary injunction is an equitable remedy and an act of discretion by the court." *Am. Civil Liberties Union v. Clapper*, 804 F.3d 617, 622 (2d Cir. 2015).  "A party seeking a preliminary injunction must generally show a likelihood of success on the merits, a likelihood of irreparable harm in the absence of preliminary relief, that the balance of equities tips in the party's favor, and that an injunction is in the public interest."  *Id.* (citing *Winter v. NRDC*, 555 U.S. 7, 20 (2008)).  When the moving party is unable to demonstrate a likelihood of success on the merits, a court still may issue a preliminary injunction if the moving party shows "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief."  *Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979)).

To the extent Santos seeks injunctive relief against defendant Ott related to his confinement at Elmira, "[i]t is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility."  *Candelaria v. Greifinger*, 1998 WL 312375, at *2 (N.D.N.Y. June 8, 1998) (citing *Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996)).  Accordingly, Santos's claim for injunctive relief against defendant Ott is dismissed.

And to the extent Santos seeks injunctive relief against Annucci, such relief would relate to his current confinement at Auburn. Because Santos's Auburn claims remain with Judge Kahn, Santos's request for preliminary injunctive relief against Annucci is denied as well.

## CONCLUSION

Because Santos meets the statutory requirements of 28 U.S.C. § 1915(a) and has filed the required authorization, the Court grants his request to proceed *in forma pauperis*. And for the reasons stated above, his claims proceed.

## ORDER

In light of the above, IT IS HEREBY

ORDERED that Santos's motion to proceed *in forma pauperis*, Docket Item 2, is GRANTED; and it is further

ORDERED that Santos's motion for a preliminary injunction, Docket Item 4, is DENIED; and it is further

ORDERED that Santos's claims against all defendants in their official capacities and for injunctive relief are dismissed; and it is further

ORDERED that DOCCS shall provide the Court with the names and addresses of John Doe No. 1 and "J. Hartman"—or a statement of written reasons why such identification is improper or impossible—**within 35 days of the date of this order**; and it is further

ORDERED that DOCCS'S failure to comply with this order may result in the Court's imposing sanctions under Rule 37 of the Federal Rules of Civil Procedure; and it is further

ORDERED that the Clerk of Court shall cause the United States Marshal to serve copies of the summons, complaint, and this order upon the named defendants (once identified), without the plaintiff's payment therefor, unpaid fees to be recoverable if this action terminates by monetary award in the plaintiff's favor; and it is further

ORDERED the Clerk of Court shall forward a copy of this order by email to Michael Russo, Assistant Attorney General in Charge, Buffalo Regional Office <Michael.Russo@ag.ny.gov>; and it is further

ORDERED, under 42 U.S.C. § 1997e(g), that once served, the defendants shall answer the complaint; and it is further

ORDERED that Santos shall notify the Court in writing if his address changes. The Court may dismiss the action if Santos fails to do so.

SO ORDERED.

Dated:    July 6, 2020
          Buffalo, New York

                                    */s/ Hon. Lawrence J. Vilardo*
                                    LAWRENCE J. VILARDO
                                    UNITED STATES DISTRICT JUDGE